## PERKINS et al. v. COWAN.
### No. 7186.

Springfield Court of Appeals.
Missouri.

Jan. 14, 1954.

Gordon R. Boyer, Lamar, J. William Cook, Jr., Branson, for appellant.

Herbert Jacob and Solbert M. Wasserstrom, Kansas City, Douglas Mahnkey, Forsyth, for respondents.

BLAIR, Judge.

This is an adoption case, first filed in Taney County, Missouri, by petitioners. Betty Perkins, sometimes called Sandra Sue Guest, was the person sought to be adopted.

As the first pleading was an application for habeas corpus, and, on the ground that a writ of habeas corpus had to be tried in

the county where such proceeding was instituted, it was stipulated by and between the parties that the case might go to Christian County. The habeas corpus part of the case was later dismissed. The case was tried by Honorable Tom R. Moore, regular judge of the Circuit Court. Instead of respondents, we will call them petitioners, as such petitioners were known in the trial court, and, instead of appellant, we will refer to her as the defendant, as she was known in the trial court, and will refer to the child as Betty Perkins, as she was designated in the petition. We will thus avoid confusion.

The evidence established the fact that the child was born out of wedlock. The natural parents were married after the birth of the child Betty, though they did not seek her custody at that time. When she was a small child, not over a few weeks old, defendant brought Betty to petitioners and asked them to keep her. Defendant Lucille Cowan was the daughter of petitioners and of the age of about nineteen years, when Betty was born. There were several other members of the family of petitioners. The child Betty grew up in the family and referred to the petitioners as father and mother. When defendant visited the parents, which was infrequently, Betty referred to her as Lucille and not as mother.

After Betty was born, defendant married James F. Guest, Betty's natural father. Defendant later married Robert E. Cowan, James Guest having died in the meantime. In June, 1952, defendant asked permission of petitioners to take Betty for a week, and, owing to some sort of trouble, retained her in the Robert E. Cowan home in Branson, Missouri, and refused to give her back. The petition for adoption was not filed until September 4, 1952.

According to the testimony of petitioners, defendant had theretofore neglected Betty shamefully. The petition alleged and the testimony of petitioners tended to show, that defendant was not a proper person to have the care and custody of Betty. Petitioners' evidence tended to show that both Dr. Cowan and defendant were hard drinkers, to say the least, and, on that account alone, were unfit to have Betty in their home.

Some of the petitioners' testimony tended to show that defendant was largely responsible for the separation of Dr. Cowan and his first wife. The testimony of Mrs. Kitty Hutchinson, by deposition, was that she saw defendant half naked, sitting on the lap of Dr. Cowan in his rooms a few days after the first Mrs. Cowan procured a divorce, and the custody of their child. The testimony of petitioners tended to show that defendant had conducted herself most affectionately with Dr. Cowan.

Defendant was making plenty of money and the testimony of petitioners' family, some of them brothers and sisters of defendant, tended to show that none of that money ever reached petitioners, for the care of Betty, during all of the years she was with them.

According to the testimony of defendant's witnesses, defendant was lavish in spending money for the support of Betty. As a witness, Betty expressed herself as willing to stay with defendant and Dr. Cowan, and enjoy the association of other children of her own age, who lived in Branson. Dr. Cowan and defendant had only one room, back of his dental parlors in Branson, and Betty was crowded into that room.

It was admitted that petitioners were good people and hard working, religious, farm folks. The testimony of Mrs. Perkins, one of the petitioners, was very short. Most of the testimony of petitioners is found in the testimony of William Perkins, the husband, and other persons, besides his wife. William Perkins may have been reluctant, when Betty was first brought out to his house by defendant as a small child; but his testimony at the trial indicates that he was very anxious for her return, after having had her for many years.

■ Petitioners have cited paragraph 4 of Section 510.310, RSMo 1949, V.A.M.S. Among other things, that section provides that, "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." So we, as an

appellate court, are authorized to find the facts on contradictory evidence, as did the trial court, which saw and heard the witnesses.

■ Defendant seems to have taken the position that her consent was necessary before a rule for adoption could be issued. There is no question in our minds that the consent to adoption may be withdrawn, under certain circumstances, but those circumstances do not exist, where the natural mother is shown to be an unfit person to have the child and has neglected her for years.

Defendant contends that the joinder of two entirely different causes of action is error. Evidently defendant refers to the fact that this case first started out as a habeas corpus case. The trial court disposes of that very nicely in its decree.

■ Petitioners contend that defendant has not complied with Rule 1.08 of the Supreme Court of Missouri, 42 V.A.M.S., in her brief. The trial court was certainly entitled to find the facts for petitioners, and we will not stop to determine whether or not defendant has met the requirements of Supreme Court Rule 1.08 in her brief.

■ In its decree, the trial court recited all of the facts in the case, and we are unable to see how any other conclusion could have been reached than that announced by the trial court. Under the facts so found, Betty was very fortunate in being left by her natural mother in the good home provided by petitioners, and if the evidence can be believed, which was solely the privilege and duty of the trial court, she is fortunate indeed that she has spent the years of her early childhood with her grandparents, the petitioners, who are justly found to have been good persons and to have been anxious for her return.

We have not forgotten that, as a witness, Betty expressed her inclination to be with her natural mother, rather than with petitioners. A child of that age is largely influenced by her immediate surroundings. We are satisfied that, as she grows older,

she will be glad that Judge Moore directed that she be taken back to her first home. She is not old enough yet to advise us disinterestedly what will be for her best interest, which can best be determined by her in ten years from today, rather than now.

The judgment of the trial court is approved and meets with our own judgment as to what the evidence shows. That judgment is accordingly affirmed.

It is so ordered.

McDOWELL, P. J., concurs.